Bianca M. Olivadoti (Bar ID No. 112962014)
Opeyemi D. Akinde (Bar ID No. 335432020)
JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, New Jersey 07922
(973) 795-5200
*Attorneys for Defendant GNS Enterprises 6, L.P., d/b/a McDonalds of Camden, New Jersey*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TYRIE E. WEBB, <br><br> Plaintiff, <br><br> v. <br><br> GNS ENTERPRISES 6, L.P., D/B/A MCDONALDS OF CAMDEN, NEW JERSEY; and JOHN DOES 1-5 AND 6-10, <br><br> Defendants. | Civil Action No.: <br><br><br> **NOTICE AND PETITION FOR REMOVAL OF CASE FROM THE SUPERIOR COURT OF NEW JERSEY, LAW DIVISION, CAMDEN COUNTY** |

Defendant GNS Enterprises 6, L.P., d/b/a McDonalds of Camden, New Jersey ("GNS"), pursuant to 28 U.S.C. §§ 1332 and 1446, respectfully submits this Notice and Petition for removal of a case from the Superior Court of New Jersey, Law Division, Camden County, Docket No. CAM-L-3704-25, and, as grounds for removal, alleges as follows:

1. On or about November 5, 2025, Plaintiff Tyrie E. Webb ("Plaintiff") filed a civil action captioned <u>Tyrie E. Webb vs. GNS Enterprises 6, L.P., d/b/a McDonalds of Camden, New Jersey; and JOHN DOES 1-5 AND 6-10</u>, Docket No. CAM-L-3704-25, in the Superior Court of New Jersey, Law Division, Camden County. A true and correct copy of the Complaint in that action is attached hereto as Exhibit A.

3. GNS was served with a copy of the Complaint on November 24, 2025.

4. This Notice and Petition is timely filed within the provisions of 28 U.S.C. § 1446(b)(3), as GNS has affected removal within thirty (30) days of service. See 28 U.S.C. § 1446(b)(1).

5.   All served defendants consent to removal.[1]

6.   No proceedings have taken place in the state court action. GNS has not served an answer or other response to Plaintiff's Complaint.

7.   This action is removable to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332, as it involves a controversy between citizens of different states:

> A. Plaintiff is, and has been, both upon the filing of the subject Complaint, and at the time of filing of this removal petition, a resident of the State of New Jersey. (See Exhibit A at ¶ 1).
>
> B. GNS is a Limited Partnership with three members:
>
>> a. Grant Skyllas, who is, and has been, both upon filing of the subject Complaint and at the time of filing of this removal petition, a resident of the State of Pennsylvania;
>>
>> b. The Skyllas Family Trust, which has a single trustee, Grant Skyllas, who is, and has been, both upon filing of the subject Complaint and at the time of filing of this removal petition, a resident of the State of Pennsylvania; and
>>
>> c. GNS Enterprises, Inc., which is incorporated and has its principal place of business in Pennsylvania.

8.   As set forth in the Complaint, Plaintiff alleges the following causes of

---

[1] Plaintiff's Complaint pleads only GNS and "John Doe" fictitious defendants.

2

action: (1) retaliation in violation of the Conscientious Employee Protection Act ("CEPA"); and (2) Request for Equitable Relief. Plaintiff's Complaint seeks "economic compensatory damages, non-economic compensatory damages, punitive damages, interest, costs of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, and any other relief the Court deems equitable and just." (See Exhibit A, ¶¶ 89, 98). Thus, the entire amount in controversy contemplates an amount exceeding the sum of $75,000, which is the jurisdictional threshold set by 28 U.S.C. § 1332.

9.  Because there is complete diversity between the parties and the amount in controversy is in excess of $75,000, this Court has original jurisdiction over Plaintiff's claims by virtue of diversity of citizenship and satisfaction of the amount in controversy requirement of 28 U.S.C. § 1332. This action is properly removable to federal court pursuant to 28 U.S.C. § 1332(a).

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a).

11. GNS files this Notice of Removal without waiving any defense to Plaintiff's claims or conceding that Plaintiff has pled claims upon which relief can be granted.

12. Pursuant to 28 U.S.C. § 1446(d), GNS has given written notice of the removal of this action to all adverse parties and have filed a copy of this notice with the Clerk of the Superior Court of New Jersey, Law Division, Camden County.

**WHEREFORE**, GNS respectfully requests that the within action, now pending in the Superior Court of New Jersey, Law Division, Camden County, be removed to the United States District Court for the District of New Jersey.

Respectfully submitted,

JACKSON LEWIS P.C.

By: *s/ Bianca M. Olivadoti*
Bianca M. Olivadoti
Opeyemi D. Akinde
*ATTORNEYS FOR DEFENDANT GNS ENTERPRISES 6, L.P., D/B/A MCDONALDS OF CAMDEN, NEW JERSEY*

Dated: December 24, 2025

4901-2133-2612, v. 1

# EXHIBIT A

**COSTELLO & SILVERMAN, LLC**
By: Regina D. Poserina
Attorney I.D. No. 016141992
18000 Horizon Way, Suite 800
Mount Laurel, NJ 08054
(856) 727-9700
rposerina@costellosilverman.com
Attorneys for Plaintiff

| | |
|---|---|
| TYRIE E. WEBB, | SUPERIOR COURT OF NEW JERSEY |
| | CAMDEN COUNTY - LAW DIVISION |
| Plaintiff, | |
| | CIVIL ACTION |
| vs. | |
| GNS ENTERPRISES 6, L.P., d/b/a MCDONALD'S OF CAMDEN, NEW JERSEY; and JOHN DOES 1-5 AND 6-10, | DOCKET NO: |
| | COMPLAINT AND JURY DEMAND |
| Defendants. | |

Plaintiff, Tyrie E. Webb, residing in Camden, County of Camden, State of New Jersey, by way of Complaint against the Defendants, says:

**Preliminary Statement**

Plaintiff alleges that he was unlawfully retaliated against for engaging in whistleblowing conduct, in violation of the New Jersey Conscientious Employee Protection Act, ("CEPA").

## Identification of Parties

1. Plaintiff Tyrie E. Webb ("Plaintiff") is, at all relevant times herein, a resident of Camden, County of Camden, State of New Jersey, and was an employee of McDonald's, City of Camden, NJ.

2. Defendant GNS Enterprises 6, L.P., d/b/a McDonald's Of Camden, New Jersey (hereinafter "GNS") is, at all relevant times herein, a Pennsylvania corporation conducting business in the State of New Jersey at 1 Haddon Avenue, Camden, New Jersey 08103, and was the employer of Plaintiff and other individuals named herein.

3. Defendants John Does 1-5 and 6-10, currently unidentified, are individuals and/or entities who, on the basis of their direct acts or on the basis of *respondeat superior*, are answerable to the Plaintiff for the acts set forth herein.

## General Allegations

4. Plaintiff began employment at Defendant GNS in September 2022.

5. His first job at GNS was as a McDonald's worker.

6. Over the course of several months, Plaintiff received promotions including to as a crew trainer.

7. That position was considered a manager job.

8. In August 2023, the client was promoted to be a kitchen manager.

9. His salary in this positon was an hourly rate of $18.25 per hour.

10. At this point in time, client worked between 20 and 31 hours per week.

11. The kitchen manager job entailed oversight of the people who worked in the McDonald's, including such issues as requiring all employees to wear hairnets, making sure the timers on the cooking food were correct for the different food being cooked; make sure food is

made the correct way in order to abide by McDonald's standards; place stickers on different preparation tables to ensure that food was kept safe; and other food safety related tasks.

12. Several months later, Plaintiff was asked to perform inventory at this McDonald's location.

13. This job required Plaintiff, at the end of every week, to count the items in the freezers and refrigerators to determine how much cold and frozen food was onsite; and also count the amount of bread, packets of ketchup, and other miscellaneous supplies were onsite.

14. Plaintiff was told he would receive an increase in pay after taking on the inventory job, after completing some classes. Plaintiff ended up completing the classes in three days, but did not receive the pay increase.

15. Plaintiff spoke with district manager, Christine Duncan, about the failure to give him the pay increase. After waiting two or three months, Plaintiff threatened Christine that he would leave his position if he raise was not paid.

16. Once hearing this, Ms. Duncan gave Plaintiff the raise and increased it to a $2.00 raise instead of the promised $1.00 raise.

17. The store's general manager was Ikea Moore.

18. Plaintiff had regular general interactions with Ms. Moore as part of Plaintiff's job.

19. Ms. Moore was also in charge of creating the work schedule for all of the McDonald's employees at this location.

20. On or about November 2024, Ms. Duncan took the job of creating employees schedules away from Ms. Moore and took over the job herself.

21. When this occurred, Ms. Duncan gave Plaintiff only 17 hours per week.

22. When Ms. Duncan decreased his hours, Plaintiff asked her why he was only given 17 hours per week.

23. Ms. Duncan stated that McDonald's was reducing his hours, but gave no reason as to why.

24. However, the Plaintiff was still expected to perform his job of kitchen general manager and inventory person.

25. On or about May 2025, Plaintiff and other McDonald's employees would often hear a loud banging noise near the deep fryers where chicken nuggets and other foods are cooked.

26. Ms. Moore received complaints from McDonald's employees that this loud banging noise was occurring on a regular basis.

27. Upon information and belief, Ms. Moore relayed those complaints to Ms. Duncan.

28. During this time, Plaintiff was aware that both Ms. Moore and Ms. Duncan knew of the loud noises coming from the back fryer, as Plaintiff had discussed this matter with Ms. Moore, and had seen maintenance men work on the deep fryer. They were unable to fix the fryer noise.

29. In addition, there were times when the deep dryer did not work, requiring the McDonald's workers, including Plaintiff, to use other equipment in order to cook the chicken nuggets.

30. Around this time, McDonald's hired a technician to come out and work on the deep fryer. This person worked on the fryer for approximately four hours.

31. The deep fryer worked for approximately two days, but then later started banging again.

4

32. Defendants were aware, based on their payment for workers to fix the fryer, that the fryer was not working.

33. During the entire time Plaintiff was employed at GNS, he never saw anyone come out to clean the deep fryer, and wondered if Defendant GNS's failure to clean the deep fryer could be a fire hazard.

34. On or about May 5, 2025, Ms. Duncan was witnessed preparing the restaurant for an inspection, to be performed by managers from several other of Defendants' locations in the area. The inspections were for food safety and general safety issues.

35. Upon information and belief, if the Defendants' Camden location did not pass this inspection, the store could have been shut down.

36. On May 14, 2025, Plaintiff dropped off his girlfriend, Imani McGahee, off at Defendants' Camden location, where she also worked.

37. Before Plaintiff exited the driveway, Ms. McGahee texted Plaintiff telling him to come back into the restaurant because there was a fire.

38. Plaintiff went into the building and saw the back wall, near part of the deep fryer, on fire.

39. Plaintiff recorded this fire as it was occurring.

40. Defendants' employees were attempting to put the fire out, while other employees were yelling to call the fire department.

41. Manager Duncan told the employees that they could not call the fire department because doing so would shut the restaurant down.

42. The next day, Plaintiff went to work at the Defendant's Camden McDonald's.

43. He saw that Ms. Duncan had pulled out the back wall of the restaurant, and was scraping the grease off of it.

44. The client recorded pictures of all of the grease on the back wall while making comments during the recording that Defendants had been serving food from that deep fryer and allowing their employees to eat the food, aware that the large amount of grease was present.

45. During the recording, Plaintiff stated, "I am going to send to corporate," meaning the recording.

46. Ms. Duncan was present while Plaintiff was recording this video, but did not say anything to him.

47. The restaurant side that had caught fire was the usual side where Plaintiff stood as the kitchen manager to make food, so he had to cook food in another section of the building.

48. Despite being in another area, Plaintiff could continue to see Ms. Duncan continuing to clean the grease off of the back wall.

49. Several days later, Plaintiff was working at the Defendant's McDonald's with Ms. Duncan's mother, Monica Epps, who was also a manager at this location.

50. Ms. Epps routinely made orders wrong, which necessitated other employees to remake the food that had been ordered.

51. Plaintiff was upset by the time taken by the employees to remake the food, and asked Ms. Epps to ensure she was reading the receipts properly.

52. Ms. Epps started screaming at Plaintiff, later stating that she was leaving because "I can't do this anymore."

53. Ms. Epps began cursing at Plaintiff, causing Plaintiff to tell her at least twice to stop cursing.

6

54. The following week, on or about May 21 or 22, 2025, Plaintiff was due to be paid. He was typically paid on a Wednesday or Thursday.

55. When Wednesday or Thursday came, Plaintiff's paycheck was not in his bank account.

56. Plaintiff was also due to work on that Thursday, May 22, 2025, from 1:00 p.m. to 7:00 p.m.

57. Plaintiff sent a text message to general manager, Ms. Moore stating that she had until 2:00 p.m. that day to pay him or he would not come in for his shift.

58. When the client was not paid by 2:00 p.m., he did not go in and work his shift.

59. He was later paid at approximately 6:00 p.m. that evening.

60. Nine hours later, at 3:00 a.m., Ms. Moore texted Plaintiff and stated that Ms. Duncan had decided to fire him for being a no-call, no-show.

61. The next day, Plaintiff sent a text to Ms. Duncan, telling her that he really couldn't believe she was letting him go after everything he had done for Defendant GNS.

62. Ms. Duncan responded that she understood he was upset, and that this was not a personal decision.

63. She stated that that showing up reliably was a company standard, especially for their mangers, which needed to be upheld regardless of previous performance.

64. Plaintiff had never been disciplined before.

65. Multiple managers had been a no-call, no-show, and were permitted to continue employment and treated in a different way and manner than Plaintiff was treated.

66. Plaintiff worked up to and beyond the legitimate expectations of his employer.

67. A number of state regulatory and statutory schemes require restaurants such as Defendant's McDonald's to develop, maintain and adhere to customer and client safety program.

68. For example, the New Jersey food code, which is based on the FDA food code, sets forth requirements for food establishments to ensure the safety and sanitation through handling, preparation, and storage processing.

69. Key components of the New Jersey food code include proper food handling, maintaining cleanliness in food establishments, preventing cross contamination of food, maintaining safe food temperatures, and ensuring proper hand washing and hygiene practices.

70. N.J.A.C. § 8:24-2.1(c) 3.v. requires that the person in charge of a retail food establishment operations must ensure that employees and other persons entering the food preparation areas comply with the New Jersey code through "routine monitoring of solution temperature and exposure time for hot water sanitizing, and chemical concentration… that employees are properly sanitizing multiuse equipment and utensils before they are reused."

71. N.J.A.C. § 8:24-4.5 requires that "[e]quipment and equipment components shall be maintained in a state of repair and condition that meets the requirements specified under N.J.A.C. 8:24-4.1 and 4.2."

72. At those sections it states that "materials that are used in the construction of utensils and food-contact surfaces of equipment shall not allow the migration of deleterious substances that impart colors, odors, or tastes to food and under normal use conditions shall be safe, durable, corrosion-resistant, and nonabsorbent, sufficient in weight and thickness to withstand repeated warewashing…"

73. The New Jersey code also requires that "[n]onfood-contact surfaces of equipment that are exposed to splash, spillage, or other food soiling or that require frequent cleaning shall be constructed of a corrosion resistant, nonabsorbent, and smooth material."

74. At section (k), the code requires that "[m]aterials that are used to make single-service and single-use articles:

   1. Shall be safe and clean; and

   2. Shall not:

      i. Allow the migration of deleterious substances; or

      ii. Impart colors, odors, or tastes to food.

75. N.J.A.C. § 8:24-4.6(a) requires that "[e]quipment food-contact surfaces and utensils shall be clean to sight and touch."

76. At subsection 4.6, the Code mandates that

   (b) food-contact surfaces of cooking equipment and pans shall be kept free of encrusted grease deposits and other soil accumulations;

   (c) Non food-contact surfaces of equipment shall be kept free of an accumulation of dust, dirt, food residue, and other debris;

   (d) Equipment food-contact surfaces and utensils shall be cleaned:

      1. Before each use with a different type of raw animal food…;

      2. Each time there is a change from working with raw foods to working with ready-to-eat foods;….

      5. At any time during the operation when contamination may have occurred.

77. During the entire time of Plaintiff's employment Plaintiff never saw the fryers, and deep dryers, cleaned to the point of removing the grease from the surfaces.

78. After complaining to manager Ms. Duncan, Ms. Duncan became openly hostile to Plaintiff, refusing to speak with him and limited his hours.

79. The second time that Plaintiff complained to Ms. Duncan regarding the condition of the Defendant's McDonald's, Ms. Duncan become openly hostile again to Plaintiff, refusing to speak with him, and withholding his paycheck.

80. Shortly thereafter, upon information and belief, Defendant promoted one of the other managers to fill Plaintiff's position.

81. Up to this point, Plaintiff had not been made aware of any concerns or deficiencies in his performance.

82. Indeed, Plaintiff remained a top performer at the restaurant.

83. Plaintiff reasonably believe that Ms. Duncan, on behalf of Defendant GNS, was engaging in conduct in violation of state food safety codes, and local fire codes, by her failure to have the restaurant adequately cleaned; her failure to close the restaurant due to its unsafe and dirty condition; her continuing serving customers despite multiple violations; and her failure to call a fire company due to the fire in the restaurant.

84. A determinative and/or motivating factor in Defendants' decision to terminate Plaintiff's employment was his whistleblowing conduct.

85. Plaintiff has been caused to suffer economic and non-economic harm as a result of Defendants' retaliation.

86. Because the retaliation set forth above was especially egregious and was engaged in and/or willfully ignored by one or more members of upper management, punitive damages are warranted.

## COUNT I

### CEPA

87. Plaintiff hereby repeats and re-alleges paragraphs 1 through 86, as though fully set forth herein.

88. Plaintiff was a whistleblower, as defined in CEPA.

89. For the reasons set forth above, Plaintiff was subjected to retaliation in violation of CEPA.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative, together with economic compensatory damages, non-economic compensatory damages, punitive damages, interest, costs of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, and any other relief the Court deems equitable and just.

## COUNT II

### Request for Equitable Relief

90. Plaintiff hereby repeats and re-alleges paragraphs 1 through 89, as though fully set forth herein.

91. Plaintiff requests the following equitable remedies and relief in this matter.

92. Plaintiff requests a declaration by this Court that the practices contested herein violate New Jersey law as set forth herein.

93. Plaintiff requests that this Court order the Defendants to cease and desist all conduct inconsistent with the claims made herein going forward, both as to the specific Plaintiff and as to all other individuals similarly situated.

94. To the extent that Plaintiff was separated from employment and to the extent that the separation is contested herein, Plaintiff requests equitable reinstatement, with equitable back pay and front pay.

95. Plaintiff requests, that in the event that equitable reinstatement and/or equitable back pay and equitable front pay is ordered to the Plaintiff, that all lost wages, benefits, fringe benefits and other remuneration is also equitably restored to the Plaintiff.

96. Plaintiff requests that the Court equitably order the Defendants to pay costs and attorneys' fees along with statutory and required enhancements to said attorneys' fees.

97. Plaintiff requests that the Court order the Defendants to alter their files so as to expunge any reference to which the Court finds violates the statutes implicated herein.

98. Plaintiff requests that the Court do such other equity as is reasonable, appropriate and just.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative, together with economic compensatory damages, non-economic compensatory damages, punitive damages, interest, costs of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, and any other relief the Court deems equitable and just.

**COSTELLO & SILVERMAN, LLC**

Dated: November 5, 2025

By: _/s/ Regina D. Poserina_
**Regina D. Poserina**

## DEMAND TO PRESERVE EVIDENCE

1.  All Defendants are hereby directed and demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's cause of action and/or prayers for relief, to any defenses to same, and pertaining to any party, including, but not limited to, electronic data storage, closed circuit TV footages, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages and any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

2.  Failure to do so will result in separate claims for spoliation of evidence and/or for appropriate adverse inferences.

                                                                     **COSTELLO & SILVERMAN, LLC**

                                                                     By:   */s/ Regina D. Poserina*
                                                                            **Regina D. Poserina**

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

                                                                     **COSTELLO & SILVERMAN, LLC**

                                                                     By:   */s/ Regina D. Poserina*
                                                                            **Regina D. Poserina**

## RULE 4:5-1 CERTIFICATION

1. I am licensed to practice law in New Jersey and am responsible for the captioned matter.

2. I am aware of no other matter currently filed or pending in any court in any jurisdiction which may affect the parties or matters described herein.

**COSTELLO & SILVERMAN, LLC**

By: ***/s/ Regina D. Poserina***
**Regina D. Poserina**

## DESIGNATION OF TRIAL COUNSEL

Regina D. Poserina, Esquire, of the law firm of Costello & Silverman, LLC, is hereby designated trial counsel.

**COSTELLO & SILVERMAN, LLC**

By: ***/s/ Regina D. Poserina***
**Regina D. Poserina**